IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
98 JAN 13 PH 2:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| SHERRY STABILE, | } |
| Plaintiff | } |
| vs. | } CIVIL ACTION NO. |
| BRUNO'S INC., | } CV-96-AR-2307-S |
| Defendant | } |

ENTERED
JAN 13 1998

## MEMORANDUM OPINION

Before the court is a motion by defendant, Bruno's Inc. ("Bruno's"), for summary judgment on all counts asserted by plaintiff Sherry Stabile ("Stabile"), who sues pursuant to Title VII of the Civil Rights Act, 42 U.S.C. 21 2000e, for alleged employment discrimination. Specifically, Stabile asserts: (1) that she endured a sexually hostile work environment while employed at Food World, which is owned by Bruno's,[1] (2) that Bruno's retaliated against her after she complained of the hostile work environment, and (3) that Bruno's wrongfully terminated her employment. The court finds that Bruno's motion should be granted in part, and denied in part. Summary judgment is warranted on Stabile's post-October 15, 1994 sexual hostile environment allegations involving co-worker James Cunningham ("Cunningham") and her sexual hostile environment claims involving supervisor Kenneth Collins ("Collins"). Her pre-

---

[1] The court will refer to Food World and Bruno's collectively as "Bruno's," unless otherwise necessary for the sake of clarity.

October 15, 1994 claims involving Cunningham survive, as well as her retaliation claims as they relate, both, to her terms and conditions of employment, as well as her discharge.

Also before the court is Stabile's motion to dismiss, "if not already having done so," her state law assault and battery claim asserted against former defendant, Kenneth Collins. On December 9, 1996, this court granted, without prejudice, Stabile's motion to dismiss the "above-styled action, insofar as it relates to claims against Kenneth Collins...." Accordingly, Stabile's present motion to dismiss is deemed moot.

## I. FACTS[2]

Stabile began working at Bruno's on October 26, 1992. In 1994, James Cunningham began sexually harassing Stabile. Stabile accuses Cunningham of, among other acts, grabbing her, running his fingers through her hair, touching her rear end, making comments about a nude dance club and articulating his desire to have sexual relations with Stabile in the grocery store. Cunningham was a transient worker who performed odd jobs for Bruno's in exchange for old groceries.

---

[2] The facts are presented in the light most favorable to Stabile, the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 - 59, 90 S. Ct. 1598, 1608 (1970).

2

In September 1994 Stabile complained to the bakery manager, Kenneth Collins, who explained that he could do nothing to help Stabile, but suggested that she scare Cunningham off with a butcher knife. Next, Stabile complained to Pat Morgan, a store co-manager, about Cunningham's conduct. Morgan told Stabile not to worry, but did nothing to prevent the harassment. About that same time, Stabile sought assistance from Tom Sherk ("Sherk"), who was Bruno's Director of Human Resources. Sherk met with Stabile, District Manager, James Jefferson and store Co-Manager, Patricia Johnson. Sherk assured Stabile that he would take care of the Cunningham problem. In Stabile's subsequent Equal Employment Opportunity Commission ("EEOC") charge, she indicated that Cunningham was transferred to another store, sometime around October 15, 1994, as a result of the Sherk meeting. However, in her deposition, Stabile testified that Cunningham continued to harass her after the meeting with Sherk.

At some point prior to the Sherk meeting, Bruno's transferred Morgan. Blaming Morgan's transfer on Stabile's complaints about Cunningham's harassment, Stabile's co-workers began referring to her as the "Morgan Slayer." In addition, Bakery supervisor Collins began retaliating against Stabile by assigning her tasks that were humanly impossible to complete, threatening her with his raised fist, verbally tormenting her and

3

suspending her three times. Bruno's does not dispute Stabile's claim that she was a model employee prior to her sexual harassment complaints.

In addition to the retaliatory conduct, Collins also began sexually harassing Stabile. On a daily basis he discussed his sexual activity in her presence. There is no evidence that Stabile solicited or participated in such discussions.

Bruno's terminated Stabile on February 17, 1995 after a disciplinary meeting with Collins and a union steward. During that meeting, Collins verbally abused Stabile, causing her to become upset and to begin crying. When Collins informed her that she was going to be suspended for three days, she asked her union steward if "everything was in order," and she began to leave after he responded "yes." As she was leaving, Collins called out to her but she ignored him and left the store. She soon returned to clean out her locker and, as she departed for the second time, Collins tried to trip her, causing a minor bruise. At some point prior to leaving the second time, a table full of cakes fell on the floor.

## II. SUMMARY JUDGMENT STANDARD

Under the Federal Rules of Civil Procedure, summary judgment

is appropriate where "there is no genuine issue as to any material fact and...the moving party is entitled to a judgment as a matter of law."  F.R.Civ.P 56(c).

### III. CO-WORKER SEXUAL HARASSMENT CLAIMS

**A. Claims Beyond the Scope of Stabile's EEOC Charge**

Bruno's correctly asserts that some of the events about which Stabile complains are beyond the scope of her EEOC charge and therefore that summary judgment is appropriate as to claims based on such events.  A Title VII plaintiff may pursue only those charges which are "like or related to allegations contained in [her EEOC] charge...In other words, the 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir. 1970)[3] (citations omitted).

Stabile's deposition allegations of continued harassment by Cunningham, after his purported transfer on October 15, 1994, are well beyond and outside the scope of her EEOC charge.  Stabile stated in her EEOC charge that:

---

[3] The Eleventh Circuit has adopted as precedent all Fifth Circuit Court of Appeals cases decided prior to October 1, 1981.  Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981).

5

> Beginning in the summer of 1994, I complained about a transient worker at the store who continued to harass me. On approximately October 15, 1994, the worker and both manger [sic] were transferred from the store."

Stabile Dep., Def's Ex. 4. Stabile then goes on to explain that she was harassed by Collins and other employees. *Id.* There is no indication in the EEOC charge that Cunningham continued to harass Stabile. Indeed, Stabile's charge states that "the worker" was transferred to another store on October 15, 1994. *Id.* Given this description of events, the EEOC would not have reasonably suspected or investigated any continued harassment by Cunningham after his purported transfer.

Stabile now contends that she does not remember telling the EEOC that Cunningham was transferred. Stabile Br. ¶7 at 3. However, she affirmed before a notary that she had read the charges found in her EEOC complaint and that they were true to the best of her knowledge. *See* EEOC Charge, Stabile Dep. Def. Ex. 4. Consequently, she is bound by the statements to which she affirmed, and summary judgment is appropriate on any claims of harassment by Cunningham which purportedly occurred after October 15, 1994.

**B. Bruno's Statute of Limitations Claim**

Bruno's contends that most of the harassment Stabile

6

purportedly suffered at the hands of Cunningham occurred more than 180 days prior to her EEOC charge. The EEOC received Stabile's charge on April 11, 1995. Therefore, according to Bruno's, she can only pursue those claims that occurred after October 12, 1994, the 180th day prior to her EEOC charge.

Bruno's assertion on this point is without merit. Stabile's EEOC charge indicates that a series of harassing events occurring from the summer of 1994 until October 15, 1994, when Cunningham and two managers were purportedly transferred. This court is satisfied that these allegations constitute continuing violations and therefore any harassment that occurred more than 180 days before Stabile filed her EEOC charge is actionable. *See Coon v. Georgia Pacific Corp.*, 829 F.2d 1563, 1570 (11th Cir. 1987)(holding that the continuing violation theory "relieves a plaintiff of the burden that all actionable conduct must have occurred within 180 days prior to the charge, so long as the complaint is timely as to the last occurrence"). Accordingly, Stabile's claims are not time barred.

**C. Bruno's Assertion That Stabile's Complaints Do Not Rise To The Level Of A Hostile Environment.**

Bruno's unconvincingly asserts that it is entitled to summary judgment on Stabile's sexual harassment claims because

her complaints against Cunningham do not rise to the level of a hostile environment.[4] A sexually hostile environment occurs when the conduct in question is so severe or pervasive that it "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive environment." *Fleming v. Boeing Co.*, 120 F.3d 242, 245 (11th Cir. 1997) (internal quotes omitted) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 370 - 71 (1993))(citations omitted).

Assuming that Stabile's recollection of the work environment is correct, this court is not prepared to hold, as a matter of law, that that environment was not sufficiently severe or pervasive as to alter the fundamental conditions of Stabile's employment. Certainly, non-consensual touching of the plaintiff's hair and rear end, comments about nude dancing clubs and repeated comments about having sexually relations with a person can create a hostile or offensive work environment for purposes of Title VII.

### D. Employer Liability For Co-Worker Harassment

Finally, Bruno's contends that it cannot be held liable for

---

[4] Bruno's never addresses the hostile environment claims Stabile asserts against Collins.

Cunningham's allegedly harassing conduct. Utilizing the analysis found in *Faragher v. City of Boca Raton*, 111 F.3d 1530 (11th Cir.), *cert. granted*, ___ U.S. ___, 118 S. Ct. 438 (1997). Bruno's contends that it is neither directly or indirectly responsible for Cunningham's conduct. The <u>indirect</u> liability analysis is inapplicable to the Cunningham claim, however, because Cunningham was not Stabile's supervisor. *Faragher's* <u>indirect</u> liability analysis applies when the alleged perpetrator is a <u>supervisor</u> rather than a peer level <u>co-worker</u>. *See id.* at 1535. Where the alleged harasser is a peer level co-worker, *Faragher's* <u>directly</u> liability analysis must be applied. *See id;* *Huddleston v. Roger Dean Chevrolet, Inc.*, 845 F.2d 900, 902, 904 (11th Cir. 1988).

Under the directly liability analysis, an employer is "liable for hostile environment sexual harassment if it knew, or upon reasonably diligent inquiry should have known, of the harassment and failed to take immediate and appropriate corrective action." *Faragher*, 111 F.3d at 1535 (citations omitted). "The employee can show that the employer had knowledge of the harassment by proving that she complained to <u>higher</u> <u>management</u> of the problem or by demonstrating that the harassment was so pervasive that an inference of constructive knowledge arises." *Kilgore v. Thompson & Brock Management, Inc.*, 93 F.3d

9

752, 753 - 54 (11th Cir. 1996).

In the present case Bruno's argues that it did not have notice of the alleged harassment until Stabile complained to the Human Resources Department, which immediately took corrective action. Thus, any harassment that occurred prior to the time Stabile contacted Human Resources is not actionable, argues Bruno's. In essence, Bruno's contends that Stabile's complaints to her immediate supervisor and a store co-manager do not constitute notice to "higher management." *See id.; Reynolds v. CSX Transportation, Inc.*, 115 F.3d 860, 867 (11th Cir. 1997), *petition for cert. filed*, 66 U.S.L.W., 3324 (U.S. Oct. 27, 1997) (No 97-726).

Whether or not complaints to an immediate supervisor and a store manager satisfy the "higher management" standard, Stabile's actions constitute sufficient notice. She lodged her complaints in full compliance with the Bruno's sexual harassment policy. The policy "encourages" employees to report allegations of sexual harassment to their "<u>immediate superior</u> or to the Human Resources Department." Def. Brief, Ex. 7. Surely Bruno's cannot establish sexual harassment complaint procedures and then use the "higher management" rule to avoid liability when an employee follows its procedures to the letter. Indeed, an employer is deemed to have

received constructive notice where the alleged victim follows the employer's established complaint mechanisms. *But cf. Farley v. American Cast Iron Pipe Co.*, 115 F.3d 1548, 1553 - 1555 (11th Cir. 1997)(insulating employer from liability under Title VII, for hostile environment sexual harassment claim, premised on constructive knowledge where employer adopted a comprehensive anti-discrimination policy and grievance procedure which employee failed to utilize).

### IV.  SUPERVISOR SEXUAL HARASSMENT CLAIMS

Stabile claims that she experienced a hostile work environment when Collins talked about his sexual activities in her presence almost daily.  Because Collins was Stabile's supervisor, she my show either direct or indirect employer liability.  *See Faragher*, 111 F.3d at 1535.  Unlike the Cunningham situation, where Stabile complained to supervisors, Stabile did not complain to anyone about the alleged sexual harassment by Collins.  In addition, there is no evidence that Collins' conduct was so pervasive as to constitute constructive knowledge to Bruno's.  Accordingly, Stabile cannot make out a claim for direct liability.

Therefore, Stabile's hostile environment claim can only survive if she can show: (1) that Bruno's "assign[ed] performance

11

of a non-delegable duty to [Collins] and [Stabile was] injured because of [Collins'] failure to carry out that duty, (2) that "the harassment occur[ed] within the scope of [Collins'] employment," or (3) that there is an agency relationship which aid[ed Collins'] ability or opportunity to harass [Stabile]." See *Faragher*, 111 F.3d at 1535.

There is no evidence that Stabile was injured because Bruno's assigned a non-delegable duty to Collins. Her claims may still go forward if she can show that the harassment occurred within the scope of Collins' employment. The Eleventh Circuit has held that an "agent steps outside of his employment to do some act for himself which is not connected to his employer's business." *Id.* at 1536. "[I]f the agent acts from purely personal motives, he is usually considered to have departed from his employment and his employer is not liable." *Id.* at 1537 (citations omitted). There is nothing in the record that would suggest that any harassment by Collins was undertaken for the benefit of Bruno's, rather than for Collins' own personal benefit. Consequently, Stabile's only hope is to produce evidence of "an agency relationship which aid[ed Collins'] ability or opportunity to harass [Stabile]." See *Faragher*, 111 F.3d at 1535.

12

Such an agency relationship may be shown by providing evidence that the "harassment is accomplished by an instrumentality of the agency or through conduct associated with the agency status." *Id.* at 1537. For example, Stabile may be able to show indirect "agency" liability for a hostile work environment by producing evidence that the supervisor threatened to fire or demote her if she complained about his conduct. *See id.* at 1537. She could also show indirect "agency" liability by producing evidence that the supervisor in question made employment decisions based on her response to the sexually hostile work environment he created. *See id.*

However, there is nothing in the record to suggest that Collins made any employment decisions or threats based upon Stabile's response to <u>his</u> sexually hostile conduct. Instead, Stabile complains about Collins' retaliation in the aftermath of her complaints regarding Cunningham. She appears to assert that the Collins harassment began after she complained of the Cunningham harassment. Stabile Dep. at 59 - 61. While the unique facts in the case may justify pursuit of the <u>Collins</u> harassment claim as a part of Stabile's retaliation claim, Collins' conduct is not actionable against <u>Bruno's</u> under a hostile work environment theory. Without any evidence that Collins threatened her or took negative employment actions

against her based upon her response to <u>his</u> sexually hostile conduct, Stabile cannot show indirect "agency" liability. Consequently, her attempt to obtain <u>employer</u> liability for supervisor sexual harassment must fail. Having failed to satisfy any of the three possible tests for establishing employer liability, summary judgment for Bruno's is appropriate on Stabile's supervisor sexual harassment claims.

## V.   RETALIATION CLAIMS: TERMS & CONDITIONS OF EMPLOYMENT

Bruno's argues that summary judgment is appropriate on Stabile's retaliation claims because she has shown no causal connection between her complaints and any adverse employment actions. To establish a prima facie case of retaliation

> the plaintiff must show (1) that she engaged in statutorily protected activity, (2) that an adverse employment action occurred, and (3) that the adverse action was causally related to the plaintiff's protected activities. This circuit has interpreted the causal link requirement broadly; "a plaintiff merely has to  prove that the protected activity and the negative employment action are not completely unrelated."

*Coutu v. Martin County Bd. of County Commissioners*, 47 F.3d 1068, 1074 (11th Cir. 1995).

Stabile has established a prima facie case for retaliation. She engaged in protected activity by complaining about alleged sexual harassment, which began during the summer of 1994.

14

Shortly thereafter she was the object of adverse employment actions which culminated in her February 1995 termination. In addition, Collins' sexual harassment may have begun after Stabile's complaint about Cunningham. Stabile Dep. at 59 - 61. In any event, it is clear that shortly after her complaint she was threatened by physical gestures, given tasks that were humanly impossible to complete and suspended several times. Yet, prior to complaining about sexual harassment she had been a model employee; a fact which Bruno's does not even attempt to contradict. The close proximity between these negative employment actions and her complaints about Cunningham, along with the absence of evidence regarding disciplinary action prior to the complaints, arguably suggest that the harassment complaint and the adverse employment actions are not "completely unrelated." Consequently, Stabile has made out enough of a case for retaliation in the terms and conditions of her employment to survive a summary judgment motion.

### VI.   RETALIATION: WRONGFUL DISCHARGE

Because Stabile does not produce evidence of or assert that her termination was an act of disparate treatment, based on her gender, she can only pursue a wrongful discharge claim based upon retaliation. Bruno's counters the retaliatory discharge claim by arguing that there is no causal connection between Stabile's

complaints and her discharge.  Indeed, Bruno' provides two explanations as legitimate non-discriminatory reasons for terminating Stabile; she abruptly walked out during a disciplinary meeting, and she damaged company property as she exited the premises.

Stabile argues that Bruno's' proffered reasons for terminating her are pre-textual.  Stabile claims that she did not abruptly depart from the disciplinary meeting.  Instead, she says that she became distressed after Collins verbally abused her. She then asked her union steward if everything was in order. When he responded affirmatively, she indicated she was leaving. Stabile admits that Collins called after her, as she started to leave, but she claims that her union steward never indicated to her that she was obligated to return.  In addition, Stabile claims that the union steward had exited the meeting room and that she feared returning to the room alone with Collins, her alleged harasser.  Finally, because Collins indicated to Stabile he was going to suspend her for three days and company policy requires that suspended employees leave the premises, she departed from the store.  Assuming the veracity of Stabile's recitation of events, a reasonable juror might find that Bruno's' proffered reasons for terminating Stabile were pre-textual.

Of course, Stabile's recitation of the facts surrounding her discharge are disputed by Bruno's. However, at this stage of the proceedings, the court is obligated to credit Stabile's testimony. Bruno's challenges the veracity of her testimony by asserting that Stabile is mentally unbalanced and that she has presented contradictory testimony regarding the events that led up to her departure from the store. Bruno's is fully aware, or should be aware, that Stabile's mental capacity is a factual issue which this court cannot consider in evaluating a motion for summary judgment. Moreover, after reviewing Stabile's affidavit, EEOC charge, and the pertinent portions of her deposition testimony, the court is not convinced that Stabile has produced contradictory testimony. As might be expected, Stabile's deposition testimony explains the events in far more detail than her affidavit or EEOC charge, but there is no obvious conflict between her deposition testimony and the other documents. While Stabile's testimony is in conflict with the Collins' affidavit and an unsworn statement by the union steward, the summary judgment stage is not the appropriate time to resolve such conflicts. Accordingly, summary judgment will be denied on Stabile's retaliatory discharge claim.

## VII. CONCLUSION

Accordingly, Stabile's sexual harassment complaint involving pre-October 15, 1994 harassment by Cunningham must survive summary judgment. Also surviving are Stabile's retaliation claims as they relate to her terms and conditions of employment, as well as her discharge. Summary judgment is appropriate on Stabile's harassment claims involving Collins and her post-October 15, 1994 harassment claims involving Cunningham. Finally, Stabile's motion to dismiss is moot.

A separate, appropriate order will be entered to implement this opinion.

DONE this 13th day of January, 1998.

/s/ William M. Acker
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE